# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROy RISLEY, o/b/o<br>A.D.R., a minor,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. CIV-15-91-SPS |

## OPINION AND ORDER

The claimant Roy Risley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for his son A.D.R. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining A.D.R. was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability for persons under the age of eighteen according to the Social Security Act is defined as a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations and that can be expected to cause death or that has lasted or can be expected to last for a continuous

period of not less than twelve months. *See* 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant to establish he has an impairment or combination of impairments that is severe. If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled. See 20 C.F.R. § 416.924(a)-(d)(2).

**Background and Procedural History**

A.D.R. was born on May 9, 2002, and was eleven years old at the time of the most recent administrative hearing (Tr. 102, 383). The claimant alleges A.D.R. has been disabled from birth due to attention deficit hyperactivity disorder ("ADHD") and a learning disability (Tr. 144). The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq.*) on June 29, 2009, which was denied. ALJ Osly Deramus conducted an administrative hearing and determined that A.D.R. was not disabled in a written opinion dated September 13, 2010 (Tr. 17-29). The Appeals Council denied review, but this Court reversed the decision of the Commissioner on December 12, 2012, in Case No. CIV-12-029-JHP-KEW, and remanded the case to the ALJ with instructions to set forth his findings as to Listing 112.05D and any other obviously applicable listing with specificity. After an additional administrative hearing, ALJ Bernard Porter found A.D.R. was not disabled in a written opinion dated March 28, 2014 (Tr. 359-74). The Appeals Council denied review, so the ALJ's March 2014 findings represent the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step three of the sequential evaluation. He determined A.D.R. had severe impairments, *i. e.,* borderline intellectual functioning and ADHD, but that such impairments did not meet and were neither medically nor functionally equivalent to any of the relevant listings (Tr. 362-73). The ALJ concluded that A.D.R. was therefore not disabled (Tr. 373).

## Review

The claimant contends that the ALJ erred by failing to: (i) perform a proper credibility determination, (ii) properly determine whether A.D.R.'s ADHD met or equaled Listing 112.11, and (iii) consider all of the evidence in determining whether A.D.R.'s impairments were functionally equivalent to a listing. The Court agrees the ALJ did not properly analyze whether A.D.R.'s ADHD functionally equaled a listing.

The relevant evidence in the record reveals that A.D.R. was initially placed on an Individualized Education Program ("IEP") in January 2008 (kindergarten) after testing revealed a mild delay in his oral expression, reading comprehension, and math calculation, and a moderate delay in his math reasoning (Tr. 127-34). His IEP indicated his strength was listening comprehension and his accommodations included individual instruction, peer tutoring, extended time limits to complete assignments and tests, reading directions and questions orally, testing in small groups, use of a calculator and study guides, and shortened assignments and tests (Tr. 129). A.D.R.'s subsequent IEP in January 2009 (first grade) showed he scored at the middle to end of kindergarten level in basic skills, reading, writing, math, and factual knowledge (Tr. 135-42). A.D.R.'s ability to work and cooperate with peers and teachers was listed as his strength and his accommodations remained the same (Tr. 135, 137). In April 2012 (fourth grade), A.D.R.'s test scores on the Woodcock-McGrew-Werder Mini-Battery of Achievement were in the very low range for basic skills (reading, writing, mathematics) and in the average range for factual knowledge (Tr. 536). A.D.R.'s overall performance on the

Oklahoma Core Curriculum Test administered in Spring 2013 (fifth grade) showed limited knowledge in reading, and was unsatisfactory in writing (Tr. 531-34).

In August 2009, A.D.R.'s first grade teacher LeeAnn Parks completed a teacher questionnaire wherein she compared A.D.R.'s functioning to same-age, unimpaired children (Tr. 165-72). In the functional domain of acquiring and using information, Ms. Parks indicated, *inter alia,* that A.D.R. had a very serious problem reading and comprehending written material, expressing ideas in written form, learning new material, and recalling and applying previously learned material; and an obvious problem comprehending and doing math problems, and applying problem solving skills in class discussions (Tr. 165). She noted A.D.R. did not know all of the letters of the alphabet, but that he could do addition and had "great oral communication ability." (Tr. 166). In the domain of attending and completing tasks, Ms. Parks indicated, *inter alia,* that A.D.R. had a very serious problem carrying out multi-step instructions and organizing his belongings or school materials; a serious problem focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, and completing work accurately without careless mistakes; and an obvious problem paying attention when spoken to directly and completing class and homework assignments (Tr. 167). In the domain of interacting and relating to others, she indicated A.D.R. did not have a very serious problem, serious problem, or obvious problem with any of the ten listed activities (Tr. 168). She specifically noted A.D.R. got along great, and that he was loud and yelled to get attention, but had improved by the end of the school year (Tr. 168). In the domain of caring for himself, Ms. Parks indicated, *inter alia,* that the claimant had no very

serious or serious problems, but he did have an obvious problem handling frustration appropriately, being patient when necessary, and using good judgment regarding personal safety and dangerous circumstances (Tr. 170). As to A.D.R.'s health and physical well-being, Ms. Parks noted his ADHD medication was effective and improved his functioning because he could "sit and concentrate" (Tr. 171).

At a psychological evaluation on August 6, 2009, Todd Graybill, Ph.D. administered the Wechsler Intelligence Scale for Children-Fourth Edition ("WISC-IV"), the results of which indicated A.D.R. had a full scale IQ of 70, placing him in the borderline range of intellectual functioning (Tr. 301-02). Dr. Graybill noted A.D.R. had difficulty understanding, retaining, and following simple instructions, and found his attention span and concentration abilities were impaired commensurate with his overall intellectual level (Tr. 302).

Dr. William Anderson diagnosed A.D.R. with ADHD on September 17, 2008, and managed his medication through April 2010 (Tr. 326-40). Dr. Anderson completed a Mental Status Form for Children on April 21, 2010, wherein he stated A.D.R. met people well, interacted satisfactorily, did well with other children, and was cooperative, but that he had some anger issues and behavioral problems (Tr. 316). He noted A.D.R. continued to struggle with his grades even while taking medication (Tr. 316). Dr. Anderson opined A.D.R.'s ability to pay attention, remember, and carry out instructions on an age-appropriate basis was poor, and his ability to respond to school pressure, teaching/supervision, and peers was behind for his age (Tr. 316).

On August 14, 2009, state agency medical consultant Phillip Massad, Ph.D., reviewed the record and completed a Childhood Disability Evaluation Form (Tr. 303-08). He determined A.D.R. had a marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks, and interacting and relating with others; and no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being (Tr. 305-06). On September 23, 2009, state agency medical consultant Cynthia Kampschaefer, Psy.D., affirmed Dr. Massad's opinions except she determined A.D.R. had a less than marked limitation in his ability to care for himself (Tr. 309-14).

At step three in a childhood disability case, the ALJ must determine whether the child's impairment or combination of impairments medically equals or functionally equals the listings. *See Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001). If a child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must then determine whether the child's impairment functionally equals the listing, which means that the impairment (or combination of impairments) results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a(a). These domains include: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When the ALJ determines there is a marked limitation in one of the six domains, he has found the limitation seriously interferes with the "ability to independently initiate, sustain, or

complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation interferes very seriously with a child's ability to do these things. *Id.* § 416.926a(e)(3)(i). Consideration of functional limitations includes information pertaining to functioning, such as reports of classroom performance, observations from others, or evidence of formal testing. *Id.* § 416.926a(e)(1)(i-ii).

In his written opinion, the ALJ determined that the claimant's ADHD did not meet or medically equal a listing. He then discussed the medical evidence with regard to each of the six domains of functioning, and concluded that because A.D.R.'s limitations were not extreme in any of the domains, and were marked in only one, A.D.R. did not functionally equal a listing.

The claimant contends that the ALJ improperly evaluated the evidence related to four domains of functioning: (i) acquiring and using information, (i) attending and completing tasks, (ii) interacting and relating with others, and (iii) caring for yourself. The Court agrees that the ALJ's analysis was, at a minimum, deficient in the domain of attending and completing tasks. In finding A.D.R. had a less than marked limitation in this domain, the ALJ noted the following: (i) the claimant could ride the bus, play outside, play baseball, and care for his pets; (ii) the claimant's father's testified that A.D.R. could not finish tasks and played video games for five to ten minutes at a time; (iii) Dr. Graybill's opinion that the claimant's attention span and concentration were impaired commensurate with his overall intellectual level; and (iv) the claimant's teachers' testimony about his difficulties with attending and completing tasks, but found that the evidence showed his ADHD was well controlled with medication, noting Ms.

Parks stated the claimant could sit and concentrate after taking medication, and that Dr. Anderson never adjusted the dosage (Tr. 368-69). In making such finding, however, the ALJ overlooked the probative evidence that Dr. Anderson noted the claimant continued to struggle with his grades even while taking medication, and opined that his ability to pay attention, remember, comprehend, and carry out instructions on an age-appropriate basis was poor (Tr. 316). Although the ALJ noted Dr. Anderson's findings in his analysis of the domain of acquiring and using information, he made no mention of such findings in the domain of attending and completing tasks, where they are more relevant. This was error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Briggs,* 248 F.3d at 1239 ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. Because the ALJ failed to discuss probative evidence inconsistent with his conclusion in this functional domain, the Court cannot determine whether he actually considered it, and this Court is in no position to draw factual conclusions on the ALJ's behalf. *See, e.g., Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga,* 482 F.3d at 1207–08

("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in any adjustments to the step three findings regarding any of the six domains of functioning, the ALJ should re-determine whether A.D.R. is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**